**T. A. B., Appellant,**

v.

**W. L. B., Appellee.**

**No. 6890.**

Court of Civil Appeals of Texas, El Paso.

April 30, 1980.

Rehearing Denied May 28, 1980.

Barnes & Lewis, P. C., W. R. Barnes, Tryon D. Lewis, Odessa, for appellant.

Law Offices of Bill McCoy, P. C., Bill McCoy, John W. Cliff, Jr., Odessa, for appellee.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

T.A.B. appeals from an order removing her as managing conservator of her six-year-old son and appointing her former husband, W.L.B., as managing conservator. Trial was to a jury which returned a verdict on two special issues finding (1) that the circumstances of the child or T.A.B. have so materially and substantially changed since the divorce judgment that the retention of T.A.B. as custodian of the child would be injurious to his welfare, and (2) that the appointment of W.L.B. as custodian of the child would be a positive improvement for the child. Questions as to the sufficiency of the evidence to support those jury findings and the failure of the Court to grant a mistrial or new trial because of the improper conduct between a juror and a witness are presented. We affirm.

The two jury issues track Section 14.-08(c)(1), Tex. Family Code Ann. (Supp. 1980), which provides that after a hearing the court may modify an order or a portion of the decree that:

> (1) designates a managing conservator if the circumstances of the child or parent have so materially and substantially changed since the entry of the order or decree to be modified that the retention of the present managing conservator would be injurious to the welfare of the child and that the appointment of the new conservator would be a positive improvement for the child; . . .

Appellant assigns error in that the Court failed to grant her motion for instructed verdict because there is no evidence to support either of the jury findings. Error if also assigned to the Court's overruling Ap-

pellant's amended motion for a new trial because of the factual insufficiency of the evidence to support the issues.

Section 11.13, Tex. Family Code Ann., provides for a jury trial in all suits affecting the parent-child relationship except adoptions. Prior to its amendment effective September 1, 1975, subparagraph b of Section 11.13, by rather conflicting language, provided that the judgment of the court must conform to the jury's determination. The Code provisions was an amendment of Article 4639a in effect since 1961, and, in 1974, the Corpus Christi Court of Civil Appeals in *In re Y*, 516 S.W.2d 199 (writ ref'd n. r. e.), reviewed prior decisions and expressly held that the jury verdict was binding on the trial court. See also *Taft v. Johnson*, 553 S.W.2d 408 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.). Any doubt as to the finality of the jury verdict has been removed by the 1975 amendment of Section 11.13 which provides:

(b) *The court may not enter a decree that contravenes the verdict of the jury*, except with respect to the issues of the specific terms, conditions of access to the child, support of the child, and the rights, privileges, duties and powers of conservators, on which issues the verdict, if any, if advisory only [emphasis supplied].

■ The trial Court had the power to grant Appellant's motion for a directed verdict. *Becerra v. Garibaldo*, 526 S.W.2d 780 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.). In the face of the language of the Statute, it cannot enter a decree that contravenes the verdict of the jury once it is rendered. As will be seen from the evidence to be discussed, there was evidence of probative force on the issues complained of and the Court did not err in overruling Appellant's motion for directed verdict. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194 (1952).

■ Appellant has points of error that there is no evidence to support the jury's answers. This poses the question of whether we should consider such points, for to uphold them would require rendition of judgment, as distinguished from remand. Section (b) of the Statute is in contravention of Rule 301, Tex.R.Civ.P., which provides "the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence." The language of the Legislature is clear that as to these matters we cannot enter a judgment that contravenes the verdict of the jury. Therefore, we decline to consider the "no evidence" points.

■ The trial Court could have granted a motion for a new trial, *Becerra v. Garibaldo*, supra, and we turn to a review of the factual sufficiency of the evidence. In reviewing "factual sufficiency" points of error, the Court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The parties were divorced November 5, 1976, and this case came to trial in December of 1978. The evidence is that Appellant remarried within a month of the divorce, and separated from this husband within two months. She then moved from Odessa to McCamey, Texas, and stayed there some two months, and was unemployed for one of those months. Prior to moving to McCamey, Appellant met W.H., and began dating him in March of 1977, and soon moved back to Odessa and took a secretarial job from mid-April until late June of 1977. In June, she divorced the second husband. From June of 1977 until September, Appellant was unemployed, lived with her mother, but much of her time was spent with W.H. She and her child would get up each morning and go to his house, often have breakfast there, and spend the day using the swimming pool and other things. She would fix dinner for W.H., and would remain for the evening

until 10:00 or 10:30 p. m., although a number of times it was much later. This routine occurred every day "except for a few days" for some two-and-a-half months, and, in addition thereto, Appellant and W.H. would spend alternate weekends out of town, often in Del Rio where he had a sailboat. The child did not accompany them on these weekend ventures where they stayed in a motel, but did accompany them other times when they made other trips, particularly to W.H.'s cabin in Ruidoso. Trips to Mexico were also taken. The evidence is that Appellant and W.H. did not sleep together when the child was present. Following this summer program, Appellant obtained employment, but she and the child continued to have dinner and spend their evenings at the home of W.H. She also continued her weekend trips, and she had the use of his car and credit card. This relationship with W.H. continued up until the time of trial, except for a brief period when they "broke up" and he dated others. There was evidence that Appellant stopped taking the child to church, which she had done prior to her divorce from W.L.B., and there is evidence that Appellant uses some profane or vulgar language in front of the child, but there is no evidence that this was or was not done before. In the two-year period since the prior order, Appellant has lived in four different places of residence and has had three different jobs.

■ Appellant first questions the finding of a material change of circumstances on the basis that no evidence was introduced regarding the circumstances of the child or Appellant at the time of the divorce or the prior order; therefore, it was impossible for the jury to deduce that a change in circumstances had occurred. The method of showing this change is not prescribed by the Family Code. Neither of the two Supreme Court cases relied on by Appellant, *Bukovich v. Bukovich*, 399 S.W.2d 528 (Tex.1966), or *Knowles v. Grimes*, 437 S.W.2d 816 (Tex. 1969), appear to mandate a particular mode of proof, and therefore do not support Appellant's assertion. Two cases appear to support Appellant's position. In *Davis v. Duke*, 537 S.W.2d 519 (Tex.Civ.App.—Austin 1976, no writ), the Court found that the appellant had failed to prove the conditions that existed at the time of the entry of the custody decree, but it also held that appellant failed to prove the present conditions, so the case is not authority for Appellant's position here, for the judgment could have been upheld on either finding. In *Watts v. Watts*, 563 S.W.2d 314 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.), the Court stated that "[t]o show such a change, evidence must be tendered showing the circumstances at the time of the prior order and the circumstances existing at the time of the hearing on the motion to modify." We have no quarrel with that statement as being one method of showing change, but are unable to accept it as being the only way of showing change and that "evidence must be tendered showing the circumstances at the time of prior order." The two cases, *Bukovich v. Bukovich* and *Knowles v. Grimes*, are cited as the authority for the statement, and they do not support such a statement as being the law of Texas. The requirement is that a change must be shown. Any method of proof which does that satisfies the Statute.

In *Colbert v. Stokes*, 581 S.W.2d 770 (Tex. Civ.App.—Austin 1979, no writ), the Court was faced with the same contention that we have here; that is, that there must be evidence showing the circumstances of the child or parent at the time of the divorce or the prior order. There was no such evidence, but the Court held that the jury could find a substantial change in circumstances based on the mother's unconventional marital lifestyle which began after the divorce. The case is very similar to the one before us, and the Court recited evidence that the mother had married, divorced, remarried and divorced the same man in six years. Further, during the second go-round with her new husband, she took the children to live with another man. Said the Court: "It is plain that appellant's conduct,

outlined above, occurred subsequent to the entry of the original order. It is equally manifest that such conduct constituted a material and substantial change of conditions that affected appellant's situation and the Stokes children's interest. *Wallace v. Fitch*, 533 S.W.2d 164 (Tex.Civ.App.1976, no writ)." In the case before us, Appellant's unstable lifestyle is new and different and constitutes a change in that it occurred after the prior divorce. It began with her quick marriage within the month and a quick separation, changes of residence, the relationship with W. H. which began after the first divorce but before the second one, and it continued for some eighteen months. This lifestyle to which the child was subjected supports the jury finding that the circumstances of the child or T.A.B. have materially changed. Direct evidence of a change was that, prior to the divorce, the child was taken to church but that he does not now attend church when he is with Appellant.

■ When all of the evidence is considered, we are of the opinion that it is factually sufficient to show that, as a result of the changed circumstances, Appellant's continued custody of the child is injurious to the child's welfare. "Welfare" is not defined by the Code, and Appellant here argues that it necessarily includes a showing of injury to a child's "physical or emotional" welfare. Appellee urges that the word "welfare" is not limited to physical and emotional welfare, but also includes the child's "moral" welfare. He cites Section 14.02(b)(2) which imposes the duty on the managing conservator to provide "moral and religious training." He also cites decisions that recognize the morality of, and the moral environment provided by, a custodian as relevant factors in determining custody. *Mumma v. Aguirre*, 364 S.W.2d 220 (Tex. 1963), speaks of "the best atmosphere for the mental, moral and emotional development of the child." In *De Llano v. Moran*, 160 Tex. 490, 333 S.W.2d 359 (1960), the Court recognized the importance of provid-

ing a child with the "affection, care and guidance that are essential to . . . physical, mental and moral development." As the facts of this case relate to the child's moral welfare, then, that is an element that the jury could have considered on the issue of retention of T.B. as custodian being injurious to his welfare. It is but one element, however, but, considered with those which we have previously pointed out as to the overall lifestyle to which the child has been subjected for the past two years, it affords support for the jury's verdict.

■ We are also of the opinion that the evidence supports the jury finding on Special Issue No. 2—that a change to the custody of the father would be a positive improvement. Considering all of the evidence, the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. We agree with Appellant that the fact of the remarriage of the husband standing alone is not enough; it could be a good or bad marriage as to the child's welfare. What counts is the quality of the homes established by that marriage. The evidence is that the husband in this case had remarried, his wife has a child by a prior marriage, and they had a child by this marriage. They own their home and have a stable homelife. The father has been in the same employment for five years, and the wife does not work, but stays home with the children. There is testimony that the father and his new wife and children comprise a "warm family" and a "well adjusted home." The requirement of the Statute that there must be a "positive improvement" invites comparison between the environment provided by the mother and the new environment provided by the father, and the evidence demonstrates that the child will be better off and his welfare improved in the custody of the father.

■ Appellant assigns error for jury misconduct in concealment of information by a juror on voir dire. Juror Ward did not

respond to a question by Appellant's attorney asking the panel if any of them knew one Ron Davis. Following selection of the jury, and prior to presentation of the evidence, Ward and Davis were seen engaged in conversation in the hallway by the Court Bailiff who admonished them, and they broke up the conversation. On motion for new trial, evidence was presented which shows that the relationship of the two men was very casual; that the juror Ward only knew Ron Davis by the name Davis, and both men testified that their conversation in the hallway did not involve the case. Rule 327 of the Texas Rules of Civil Procedure controls the granting of a new trial for jury misconduct, and, as material here, that Rule provides that when the "ground of the motion is misconduct of the jury . . . or because of any communication made to the jury or that they received other testimony, or that a juror gave an erroneous or incorrect answer on voir dire examination, the court . . . may grant a new trial if [said action] be material, and if it reasonably appears from the evidence . . . that injury probably resulted to the complaining party." The trial Court apparently found no misconduct because there was no intentional failure to answer the question, witness and the juror were only casual acquaintances, and their brief interlude did not include discussion of the case. *Mitchell v. Burleson*, 466 S.W.2d 646 (Tex.Civ.App.— Beaumont 1971, writ ref'd n. r. e.). The witness, Ron Davis, was not in the courtroom at the time of the voir dire examination and was not seen by the prospective juror, and it would seem that there was no intentional concealment on his part in not responding to the question. The trial Court was correct in overruling the motion for new trial, even if we assume jury misconduct, because its materiality and probable injury were not established by the evidence. *Fountain v. Ferguson*, 441 S.W.2d 506 (Tex. 1969).

All points of error have been considered, and all are overruled. The judgment of the trial Court is affirmed.