

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00196-CV

_____

IN THE INTEREST OF A.S., A CHILD

---

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-518703-12

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant G.S. (Father) raises one issue: "Whether the trial court abused its discretion in granting the modification of child support."[1] Appellees R.G. (Mother) and the Office of the Attorney General for the State of Texas (the AG) argue that the trial court did not abuse its discretion by modifying the child support. We hold that the trial court did not abuse its discretion and affirm its modification order.

## I. BACKGROUND

When Father and Mother divorced in September 2012, they had two children—an almost ten-year-old son J.S. (John) and a two-year-old daughter A.S. (Ann). Father and Mother agreed that Father would have primary possession of John while Mother would have primary possession of Ann. Regarding child support, the divorce decree provided that—because their possession and incomes were comparable—neither parent would pay child support to the other parent:

> The Court finds that the Parties have agreed and the Court having considered the circumstances of the Parties and of the Children, IT IS ORDERED neither Party is Ordered to pay regular child support payments to the other Party. The Court finds that the Parties substantially have the same income and that the Parties have substantially the same amount of court ordered possession with the children.

---

[1]We use aliases to identify the children, and we identify family members by their relationship to the children. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

Eight years later, in December 2020, John turned eighteen years old. Nine months later, in September 2021, the AG filed a "Petition for Confirmation of Non-Agreed Child Support Review Order."

On August 20, 2021, after a negotiation conference at which the AG and Mother (but not Father) appeared, a proposed "Child Support Review Order" was filed in the trial court in which the AG and Mother agreed that Father should pay $1,095 in monthly child support starting September 1, 2021. The proposed order stated that "there has been a material and substantial change in the circumstances of the child or parties," or, alternatively, "it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the [prior] order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines."[2]

On November 10, 2021, Father filed a "Motion to Dismiss and General Denial." In this document, Father acknowledged that the AG's petition for confirmation was a suit to modify the terms of child support previously ordered in the September 2012 divorce decree.

---

[2]Because Father was not paying any child support, this assertion is correct. This basis for modifying child support—that there is a "20 percent or $100" difference between what was previously ordered and what would be currently ordered under the guidelines—is found in Section 156.401(a)(2) of the Texas Family Code. *See* Tex. Fam. Code Ann. § 156.401(a)(2). As we shall see, Father contends that his case falls under Section 156.401(a-1) of the Texas Family Code, not Section 156.401(a). Under Section 156.401(a-1), the "20 percent or $100" difference is not a valid basis for modifying child support. *See id.* § 156.401(a-1).

A virtual hearing was conducted on January 11, 2022, but the associate judge did not immediately sign a written order following that hearing. On February 8, 2022, Mother filed a motion to reconsider in which she asserted that after the January 11, 2022 hearing, "the court found that there had not been a material or substantial change in circumstances to warrant the modification of primary conservator and child support with respect to the prior order that was entered on September 5, 2012, entitled Final [Decree] of Divorce." A few days later, on February 11, 2022, the associate judge signed an order in which he found that John's emancipation did not constitute a material and substantial change of circumstance and in which he denied any child-support modification.

Asserting that she had received notice of the associate judge's February 11, 2022 order on February 14, 2022, on February 15, 2022, Mother filed a request for a de novo hearing, a motion for new trial, and a petition to modify the parent–child relationship. *See* Tex. Fam. Code Ann. § 201.015(a)(1) (requiring request for de novo hearing no later than three days after receiving notice of associate judge's written order or report). In her petition, Mother alleged that "[t]he circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified" and that Father "previously had primary possession of the child, [John], and . . . said child . . . has since been emancipated since the date of the last Order." Mother added that she had "primary possession of the only minor child[] before the Court, [Ann]."

4

Elsewhere in her petition, Mother alleged that "[i]t ha[d] been three years since the order to be modified was rendered, and the monthly amount of support ordered differs by 20 percent from the amount that would be awarded in accordance with the guidelines in chapter 154 of the Texas Family Code."

On March 2, 2022, the trial court set a hearing for March 10, 2022, on Mother's (1) request for a de novo hearing and (2) motion for new trial. Seven days later, on March 9, 2022, Father filed an "Objection and Response to Motion for New Trial."

On March 10, 2022, the trial court overruled Father's objection to a de novo hearing, included Mother's petition to modify within the hearing's parameters, and heard evidence. At the conclusion of the hearing, the trial court ruled that there had been a material change of circumstances:

> The agreement and the finding that is placed in this order is that they've agreed to no support and that a -- that no support appears to be based on the following finding. The Court finds that the parties have substantially -- or the parties substantially have the same income and the parties have substantially the same amount of court-ordered possession with the children. The testimony presented today suggests that the parties . . . no longer have the same income, nor is the same amount of possession being . . . accessed by the parents with the children. Thereby the Court finds that that is a material change in circumstances and opens the door for a modification based on their agreement.

About six weeks later, on April 26, 2022, the trial court signed an "Order in Suit for Modification of Child Support Obligation" in which it found that there had been a material and substantial change in circumstances:

> It is FOUND that since rendition of the support and health care coverage order entitled Final Decree of Divorce signed on

5

09/05/2012 there has been a material and substantial change in the circumstances of the child or parties, or it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines, which warrants the following modification of the existing support order.[3]

The trial court ordered Father to pay child support in the amount of $770 each month beginning on March 1, 2022 (backdating the requirement to the month following Mother's February 2022 petition to modify the parent–child relationship). *See Holley v. Holley*, 864 S.W.2d 703, 707 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

Father appealed.

## II. FATHER'S ARGUMENTS

Although Father has only one issue, it breaks down into three components. First, his child-support obligation is not subject to modification because he and Mother contractually agreed to a variance from the child-support guidelines at the time of divorce. Second, John's emancipation was not a material and substantial change of circumstances because his emancipation before Ann's was evident when Father and Mother entered their agreement in 2012. Third, even if Father was making more money today than at the time of the divorce, his increased resources were not

---

[3]The trial court's finding of a "material and substantial change in circumstances" could fall under either Section 156.401(a)(1) or Section 156.401(a-1). *See* Tex. Fam. Code Ann. § 156.401(a)(1), (a-1). The trial court's finding of a "20 percent or $100" difference would necessarily fall under Section 156.401(a)(2). *See id.* § 156.401(a)(2).

evidence of a material and substantial change of circumstances warranting a modification.

### III. SECTION 156.401(a) OR SECTION 156.401(a-1)?

A preliminary issue that we must address is whether Father's case falls under Section 156.401(a) or under Section 156.401(a-1) of the Texas Family Code. The relevant provisions provide,

> (a) Except as provided by Subsection (a-1), (a-2), or (b), the court may modify an order that provides for the support of a child, including an order for health care coverage under Section 154.182 or an order for dental care coverage under Section 154.1825, if:
>
> > (1) the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of:
> >
> > > (A) the date of the order's rendition; or
> > >
> > > (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based; or
> >
> > (2) it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines.
>
> (a-1) If the parties agree to an order under which the amount of child support differs from the amount that would be awarded in accordance with the child support guidelines, the court may modify the order only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition.

Tex. Fam. Code Ann. § 156.401(a), (a-1). Father argues that Section 156.401(a-1) applies when the parties agreed to child support in a manner that deviates from the

guidelines, which Father asserts is what he and Mother did in 2012, whereas Section 156.401(a) applies when the trial court previously ordered child support in compliance with the guidelines, which, according to Father, is not what happened here. *See id.* § 154.124.

The distinction between Section 156.401(a) and Section 156.401(a-1) is that under Section 156.401(a), the trial court can rely on the "20 percent or $100" difference as a basis for modifying child support, but under Section 156.401(a-1), the trial court may not. *See id.* § 156.401(a)(2), (a-1). Because the trial court relied in part on the "20 percent or $100" difference as a basis to modify child support under Section 156.401(a)(2), and because Father has not attacked that ground, if Section 156.401(a)(2) applies, then we could potentially affirm the trial court's judgment on that basis. *See Padilla v. Grimes & Assocs. Consulting Eng'rs, L.P.*, No. 11-18-00020-CV, 2020 WL 508269, at *4 (Tex. App.—Eastland Jan. 31, 2020, no pet.) (mem. op.); *Parsons v. Greenberg*, No. 02-10-00131-CV, 2012 WL 310505, at *13 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.).

Both Mother and the AG, in their briefs, rely exclusively on Section 156.401(a-1). Neither argues that we should affirm the trial court's judgment on the basis of its Section 156.401(a)(2) finding. Because we resolve this dispute under the trial court's finding of a material and substantial change of circumstances, which would be valid under either Section 156.401(a)(1) or Section 156.401(a-1), we do not have to resolve

whether the judgment could be affirmed on the basis of the trial court's Section 156.401(a)(2) finding. *See* Tex. R. App. P. 47.1.

## IV. APPLICABLE LAW AND STANDARD OF REVIEW

A court may modify a child-support order if the circumstances of the child or a person affected by the order have materially and substantially changed since the previous child-support order was rendered. Tex. Fam. Code Ann. § 156.401(a)(1), (a-1). The person seeking modification has the burden of establishing a material and substantial change. *In re A.A.T.*, 583 S.W.3d 914, 920 (Tex. App.—El Paso 2019, no pet). The court retains broad discretion in making the equitable decision of whether to modify a support order. *Id.* We will not disturb an order regarding child support on appeal unless the complaining party can show a clear abuse of discretion. *Id.*

In determining whether the trial court abused its discretion, we engage in a two-pronged inquiry: (1) did the trial court have sufficient evidence on which to exercise its discretion, and (2) did it err in applying its discretion? *Id.* Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision, or conversely, whether the ruling was arbitrary and unreasonable. *Id.*

In determining whether legally sufficient evidence supports the trial court's decision, we consider the evidence in the light most favorable to the findings necessary to support the decision, and disregard evidence contrary to the findings unless a reasonable factfinder could not. *Id.* In making this determination, we are

9

mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* When there is conflicting evidence, it is the province of the factfinder to resolve such conflicts. *Id.* Even if evidence is undisputed, it is the factfinder's province to draw from the evidence whatever inferences it wishes so long as more than one inference is possible. *Id.* at 920–21. However, if the evidence allows only one inference, neither the factfinder nor the reviewing court may disregard it. *Id.* at 921.

When reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.* The reviewing court cannot substitute its conclusions for those of the factfinder; if sufficient competent evidence of probative force supports the finding, it must be sustained. *Id.* It is not within the province of an appellate court to interfere with the factfinder's resolution of evidentiary conflicts, evidentiary weight, or witness credibility; we may not substitute our judgment for the factfinder's. *Id.*

In determining whether a trial court erred in applying its discretion, the test is whether the trial court acted without reference to any guiding rules and principles. *Id.* In other words, the appropriate inquiry is whether the trial court ruled arbitrarily or unreasonably. *Id.* The mere fact that in a similar circumstance an appellate court would have ruled differently does not show that the trial court abused its discretion when the matter falls within its discretionary authority. *Id.*

# V. DISCUSSION

**A. Whether Father's child-support obligation is not subject to modification because he and Mother contractually agreed to a variance from the child-support guidelines at the time of divorce.**

Father acknowledges that under Section 156.401(a-1), the trial court can modify child support if there has been a material and substantial change of circumstances. *See* Tex. Fam. Code Ann. § 156.401(a-1). Father emphasizes, however, that the September 2012 child-support provision was contractual, and that under contract law, Mother's change-of-circumstances arguments have no merit—effectively, because she is trying to retroactively rewrite the contract.

At the March 10, 2022 hearing, Father's attorney specifically relied on the contractual nature of the parties' September 2012 agreement: "And I'd also ask the Court to take notice as to the fact that . . . the [AG] . . . filed as a petition to confirm a non-agreed order . . . intending to modify a contractual agreement between the parties." Father's counsel argued that "this was a contract between the parties" and asserted that Mother was trying to change the contract:

> And so now that the child has aged out, mom would come in here and ask this Court to change their agreement, change the contract that they made because now she wants him to pay money. And that's why we're objecting to this entire petition to confirm and to any petition to modify child support because it is directly and specifically against the agreement of the parties. You don't get into the statute, you don't get into whether or not you can look at any of those things because the contract speaks for itself, and that contract says this is what -- this is what we've agreed to, knowing full well that in eight, nine years, one of the kiddos was going to age out. And that's why we've objected, and we objected -- we

11

made the same objection before the IV-D court, based on the agreement of the parties.

. . . .

. . . . We're not under 156.401(a). We're under 156.401[(a-1)] because this varied from the guidelines, and the case law is clear, when you vary from the guidelines, it's a contract, and the only way you get around it is if you provide for that in the contract, and they didn't. It's the same scenario when people agree to sell a house and they don't appoint a Receiver in the decree and they come back and ask the Court to do it. You can't add something to this final decree that's not already there. So you don't get to what the possession schedule is, you don't get to who's making what money.

Father also argues that because Mother's attorney drafted the September 2012 divorce decree, under contract principles, the court should construe any ambiguous provisions adversely to Mother. Before the trial court, Father's counsel argued, "As we all know, under contractual agreements, that they're construed against the drafter. At the time that this final decree was entered, my client was pro se. Mom had an attorney. That attorney drafted this decree." Father notes that Texas Supreme Court authority supports his position: "In Texas, a writing is generally construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties." *Temple-Eastex Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984). We are not persuaded.

Child-support agreements are not like property-settlement agreements, which are construed under the law of contracts. *Hill v. Hill*, 819 S.W.2d 570, 572 (Tex. App.—Dallas 1991, writ denied). In property-settlement agreements, finality is critical;

12

in order to mortgage, sell, lease, or otherwise utilize property, the parties must be able to prove title to it. *Id.* The same is not true in child-support agreements, where the State's interest in the continuing welfare of the children outweighs the parents' interest in having an established, permanent level of support payments. *Id.* Child-support agreements are not like other long-term contracts where the parties assume the risk of economic changes and product costs; rather, child-support payments are for the benefit of the children, not the parents. *Id.* Supporting one's children is not a proper area for long-term economic gambling, and courts will not enforce parties' attempts to engage in such speculation. *Id.* When parties draft child-support agreements, they cannot agree to prohibit courts from intervening as required by the Family Code to protect children. *Id.* On child-support issues, Texas's public policy is clear: the primary concern is always the children's welfare. *Id.*

Accordingly, to the extent that Father argues that the contractual nature of his and Mother's agreement prohibits any later modification, his argument fails. *See id.* In his appellate brief, Father acknowledges that even under Section 156.401(a-1), a trial court can modify child support provided there is a material and substantial change in circumstances. Father contends, though, that the circumstances had not materially and substantially changed.

**B. Whether Father's making more money today than at the time of the divorce was evidence of a material and substantial change of circumstances warranting a modification.**

Because our resolution of Father's third contention (whether the variance in Father's and Mother's incomes constituted a material and substantial change in circumstances) renders his second contention moot (whether John's earlier emancipation constituted a material and substantial change in circumstances), we address his third contention next.

Mother's counsel succinctly argued her changed-circumstances position to the trial court,

> The final decree states, ["]The Court finds the parties substantially have the same income and the parties have substantially the same amount of court-ordered possession with the children,["] and that's why child support was not ordered. That's the reasons why child support was not ordered. We are stating, Your Honor, that those circumstances have materially and substantially changed since the final decree was in 2012, whereas both parties at that time -- he had one child, she had one child. And so that was the basis of no child support. And, also, Your Honor, at that time, as it states there, both of them had roughly the same income. They do not have the same income. . . .
>
>     . . . .
>
> He makes substantially more than my client, Your Honor, and he no longer has a minor child in his possession. My client is in possession of the only minor child between the parties.
>
> Also, Your Honor, he does not have equal possession of that child. He only has the standard possession, which was in the final decree, and he's not even exercising that standard possession schedule, Your Honor.
>
> And so for those reasons, we feel that the matter has substantially and materially changed since the final decree.

14

Mother testified that in 2012, Father had primary possession of John, and she had primary possession of Ann. At that time, both Father and Mother were making about the same income. Mother said that in 2012, she made $13 per hour. She was making $16 per hour at the time of trial. Her monthly net resources were $2,375. At the time of trial, John was nineteen years old, was no longer a minor child, and lived with Mother. Mother still had primary possession of Ann. Father no longer had any child in his primary possession. Mother also asserted that Father exercised his right to see Ann only twice in 2021. Since 2012, Mother discovered that Father had a different job; she suspected that Father now made more than she did because she had an uncle who worked at the same company at which Father worked.

Father testified that he had been working at his current job nine years and that he was not working there in 2012. He acknowledged that both John and Ann were his children. He also acknowledged that at the time of trial, he did not have primary possession of any minor child and that both children lived with Mother. Father estimated that he made somewhere around $27 or $28 per hour and that he worked around fifty hours per week. For any hours over forty a week, he earned time-and-a-half hourly pay. Father estimated that he made around $60,000 in 2021.

Father said that the last time he had seen Ann was for Christmas in 2021, which was about three months before the trial. Before that, he had seen her for her birthday in August 2021. He did not remember when he last saw Ann before her birthday. Father agreed that he was not consistently exercising his right to possession

15

of Ann. He explained, however, that when he attempted to exercise his right to possession, Ann would ask to stay with Mother, whose relatives would frequently have weekend activities, and Father did not want to force the matter.

In his brief, Father argues that any increase in his financial resources was immaterial because his financial resources in 2012 did not form the basis of the child-support agreement. He contends that if his financial resources were immaterial in 2012, an increase in his financial resources in 2022 is also immaterial. Father cites *In re L.R.*, in which the court of appeals wrote, "[T]he father's financial circumstances appear to have been immaterial to the parties' initial support order, so an increase in the father's resources alone could not have been a material change in circumstances for purposes of a modification." 416 S.W.3d 675, 679 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We are not persuaded.

Father's income in 2012 was material. The 2012 agreement was based on the fact that Father and Mother had comparable incomes. The question before the trial court in 2022 was whether their respective incomes remained comparable. If they were not, one of the foundations on which the 2012 agreement was based collapsed.

Father also appears to argue that because neither his income in 2012 nor his income in 2022 was established, it is not possible to conclude that it had later increased. *See In re C.C.J.*, 244 S.W.3d 911, 917–18 (Tex. App.—Dallas 2008, no pet.); *Clark v. Jamison*, 874 S.W.2d 312, 319–20 (Tex. App.—Houston [14th Dist.] 1994, no writ). Once again, we are not persuaded.

16

Mother testified that she made $13 per hour in 2012. Based on the trial court's finding in 2012 that Father and Mother had comparable incomes—a finding that Father acknowledges in his brief—the trial court in 2022 could have reasonably concluded that Father too made around $13 per hour in 2012. As for Father's 2022 income, he (1) estimated his income in 2021, (2) testified what he made per hour, (3) stated he typically worked ten hours overtime each week, (4) acknowledged that he was paid time-and-a-half hourly wages when he worked overtime, and (5) said nothing to suggest that he was describing anything other than his current income at the time of trial, that is, he did not suggest that his 2022 income would be any different than his 2021 income.

Furthermore, the question before the trial court in 2022 was not how much Father's income had increased but whether Father's and Mother's incomes were still comparable in 2022. As the El Paso Court of Appeals stated decades ago, "The method of showing [a] change [of circumstances] is not prescribed by the Family Code." *T.A.B. v. W.L.B.*, 598 S.W.2d 936, 939 (Tex. App.—El Paso 1980), *writ ref'd n.r.e.*, 606 S.W.2d 695 (Tex. 1980). Rather, "[t]he requirement is that a change must be shown. Any method of proof which does that satisfies the [s]tatute." *Id.*

We hold that the evidence was legally and factually sufficient to show a material and substantial change in circumstances. In 2012, Father and Mother had roughly the same income, but in 2022, Father's income was approximately double that of

17

Mother's. Mother's annual salary in 2022 was about $33,280.[4] Father's annual income—using information he provided—was roughly $77,220.[5] The trial court, however, estimated Father's annual income at $60,000, which was consistent with Father's estimate of his 2021 income. We know this because in its order, the trial court identified Father's gross monthly resources at $5,000 (which, when multiplied by twelve, equals $60,000 annually). The trial court then identified Father's net monthly resources at $3,849 and ordered him to pay twenty percent of that in child support, which came to $770 per month.[6]

In short, Father and Mother no longer had comparable incomes. Mother shouldered the expenses of raising a minor child in her home with about half of Father's income. The trial court thus did not abuse its discretion by finding that the

---

[4]We arrived at $33,280 by multiplying forty hours per week by $16, which equals $640. We then multiplied the $640 Mother earns per week by fifty-two weeks in a year, which equals $33,280.

[5]The $77,220 is arrived at by (1) multiplying forty hours per week by $27, which equals $1,080; (2) multiplying ten hours per week overtime at time-and-a-half pay, that is, ten hours multiplied by $40.50, which equals $405; (3) adding the $1,080 (weekly regular pay) and the $405 (weekly time-and-a-half pay) together, which comes to $1,485; and (4) multiplying Father's weekly income of $1,485 by fifty-two (the number of weeks in a year), which comes to $77,220.

[6]Technically, twenty percent of $3,849 is $769.80.

circumstances had materially and substantially changed.[7] We overrule Father's sole issue.

## VI.  CONCLUSION

Having overruled Father's issue, we affirm the trial court's order modifying child support.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  April 20, 2023

---

[7]Father contends that principles of res judicata prohibit relitigating circumstances that were contemplated at the time the trial court signed its previous order. *See In re N.T.P.*, 402 S.W.3d 13, 19 (Tex. App.—San Antonio 2012, no pet.); *In re M.A.F.*, No. 12-08-00231-CV, 2010 WL 2178541, at *3 (Tex. App.—Tyler May 28, 2010, no pet.) (mem. op.); *Hoffman v. Hoffman*, No. 03-03-00062-CV, 2003 WL 22669032, at *6 (Tex. App.—Austin Nov. 13, 2003, no pet.) (mem. op); *In re M.N.G.*, 113 S.W.3d 27, 33–34 (Tex. App.—Fort Worth 2003, no pet.), *disapproved on other grounds by In re C.J.C.*, 603 S.W.3d 804, 819 n.79 (Tex. 2020). Because in 2012 John's emancipation eight years before Ann's was as true in 2012 as it was in 2022, Father argues that (1) it could not be attributed to a change in circumstances (because the mathematics remained the same) and (2) the parties necessarily contemplated this development in 2012. Therefore, according to Father, principles of res judicata prohibited or defeated Mother's using John's earlier emancipation as a basis to argue that the circumstances had changed. *See N.T.P.*, 402 S.W.3d at 19; *M.A.F.*, 2010 WL 2178541, at *3; *Hoffman*, 2003 WL 22669032, at *6; *M.N.G.*, 113 S.W.3d at 33–34. *But see Hargrave v. Lefever*, 82 S.W.3d 524, 527–28 (Tex. App.—San Antonio 2002, no pet.). Because we hold that the disparity in Father's and Mother's income in 2022 constituted a material and substantial change in circumstances, we need not address this issue. *See* Tex. R. App. P. 47.1.

19